SO ORDERED.

SIGNED this 07 day of January, 2008.

_____
**A. Thomas Small**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                          CASE NO.

**CHRISTOPHER SEAN MILLER**                 **07-02089-5-ATS**
**HEATHER BARNWELL MILLER**

       **DEBTORS**

## ORDER REGARDING OBJECTION TO EXEMPTIONS
## AND DEBTORS' MOTION TO CONVERT

The matters before the court are the chapter 7 trustee's objection to exemptions and the debtors' motion to convert to chapter 13.  A hearing took place in Raleigh, North Carolina on January 3, 2008.

Christopher Sean Miller and Heather Barnwell Miller filed a petition for relief under chapter 7 of the Bankruptcy Code on September 21, 2007, and Joseph N. Callaway was appointed trustee. The Millers own a house and lot at 135 Ryder Cup Circle, Raleigh, North Carolina, which they listed in Schedule A as having as value of $265,000.  At the time of the petition, the property was subject to a first lien deed of trust held by Countrywide Home Loans in the amount of $209,000, and a second lien deed of trust in the amount of $56,000 held by Mrs. Miller's father, Stephen Barnwell. However, although Mr. Barnwell's debt was incurred on November 20, 2006, the deed of trust was not recorded until May 30, 2007.  The trustee maintains that because Mr. Barnwell is an insider, the

second deed of trust is avoidable, and the trustee filed an adversary proceeding to avoid the preference pursuant to 11 U.S.C. § 547 on December 31, 2007. The trustee advised the debtors at their 341 meeting that he intended to file the adversary proceeding to avoid Mr. Barnwell's deed of trust lien.

In their original Schedule C, the Millers listed a net value of $249,100 for the house and lot, which they derived by subtracting a 6 percent realtor commission from the $265,000 value listed in Schedule A. They then indicated there was no remaining value for purposes of taking an exemption in the property. The trustee objected to the exemption, maintaining that the hypothetical costs of sale could not be subtracted from the value of the property for purposes of determining equity. The debtors responded to the objection and indicated that they believed the value of the property was actually less than scheduled, and maintained that the cost of sale deduction was proper. A few days later, on December 3, 2007, the Millers filed a motion to convert their case to chapter 13. The trustee opposes the conversion, contending that it is not sought in good faith.

After the motions were filed but before the hearing took place, Mr. Barnwell filed a notice of satisfaction of his deed of trust. The notice states that the debt was satisfied on November 30, 2007, the document was notarized on December 6, 2007, and it was filed with the Wake County Register of Deeds on December 17, 2007. Mrs. Miller testified that she asked her father to cancel the deed of trust on the advice of her attorney. On January 2, 2008, the Millers filed an Amended Schedule C, reflecting (a) a lower value for the Ryder Cup Circle property of $240,000, minus a 6 percent commission for a net value of $225,000, (b) liens of only $109,000 held by Countrywide and $2295, presumably for taxes, and (c) resulting equity claimed as exempt in the amount of $14,305.

2

On December 31, 2007, the trustee filed an adversary proceeding against the debtors seeking to have their discharge denied pursuant to §§ 727(a)(4)(A) and (a)(4)(C) as a result of the cancellation of the deed of trust after the trustee made it clear he intended to avoid Mr. Barnwell's interest in the property. The adversary proceeding also seeks to avoid the postpetition transfer of estate property to the debtors "by improving the position of the homestead exemption to a place ahead of, rather than behind, the [prepetition] Transfer" pursuant to § 549. Similarly, the trustee's action against Mr. Barnwell seeks to avoid the postpetition transfer.

The trustee contends that the cancellation of the deed of trust combined with the revised exemptions with a lower property value clearly show bad faith sufficient to deny the conversion under the reasoning of Marrama v. Citizens Bank of Mass., 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). He also maintains that the debtors are likely to assert in a chapter 13 case that the unsecured creditors are not entitled to a distribution. Thus, he contends, the conversion would allow the debtors to obtain a discharge with no return to creditors, while a distribution of the funds the chapter 7 trustee could have collected by avoiding Mr. Barnwell's lien would have provided a significant distribution to unsecured creditors absent a conversion.

The debtors vigorously maintain that they have acted in good faith. In asking Mr. Barnwell to cancel his deed of trust, the Millers' attorney relied upon dicta in the case Hunter v. Snyder (In re Snyder), 108 B.R. 150 (Bankr. N.D. Ohio 1989). In Snyder, the male debtor's parents held a second mortgage on the debtors' property, and the trustee filed a preference action against the parents. After the preference action was filed, the parents released and cancelled the second mortgage, and the debtors sought to claim an exemption in the equity they previously transferred to the parents. The court disallowed the exemption, but made the following observations:

> There appears to be some room for equity allowing an exemption if the property is reconveyed earlier in the process, before the Trustee has been forced to expend a significant amount of effort in recovering the property.  It appears that equitable considerations were a factor in a decision dealing with the "concealment" portion of § 522(g).  The Court in <u>In re Riggsby</u>, 34 B.R. 440 (Bankr. E.D. Tenn. 1983), allowed the debtors to exempt property which had been involuntarily transferred, but not listed on the debtors' schedules.  Because the debtors revealed the existence of the account at the first meeting of creditors, the exemption was allowed.  <u>Riggsby</u> at 441.  Similarly, reconveyance of voluntarily transferred property early in the case may, in some instances, lead to a finding that allowing the exemption would be proper.

<u>Snyder</u>, 108 B.R. at 154.

The Millers maintain that because the trustee had not yet filed his avoidance action when the deed of trust was cancelled, and because they notified both Mr. Callaway and the standing chapter 13 trustee of their plans to have the deed of trust cancelled and claim an exemption in the resulting equity, the exemption should be allowed under the reasoning in <u>Snyder</u>.  The Millers further maintain that they discussed the possibility that the court would not allow the exemption, and they are prepared to make payments to a chapter 13 trustee to account for the non-exempt equity.  However, Mrs. Miller testified that the amount they discussed was $15,000 over 5 years, not $56,000.

Mrs. Miller also testified about the basis for the change in valuation of the residence in the Amended Schedule C, noting that at least 10 properties in her neighborhood had been on the market recently, that a nearly identical house with more upgrades than the Millers' is currently under contract for only $242,000, and that it had been on the market for 8-10 months.  It is her opinion that the property values in her neighborhood are declining, and she believes that her house is worth at most $240,000.

The claimed homestead exemption will not be allowed in either chapter 7 or chapter 13. The trustee had advised the debtors and Mr. Barnwell (a practicing attorney) that he intended to avoid the preferential deed of trust lien. The court will not allow the debtors to deprive the unsecured creditors of the equity the trustee would have recovered had the deed of trust not been cancelled by Mr. Barnwell.

That said, the court cannot determine at this time whether the debtors are acting in bad faith. The Millers seem like honest people who took their attorney's advice.[1] They did not attempt to hide the fact that Mr. Barnwell was going to cancel the deed of trust and that they would seek to exempt the resulting equity, nor that they planned to convert the case to chapter 13 and would pay required equity into the plan if the exemption was disallowed. The trustee planned to avoid the deed of trust, and because the exemption will not be allowed, the cancellation of the deed of trust had the same effect.[2]

Of course the Millers have not yet filed a proposed chapter 13 plan, and only when the plan is filed will the court be able to assess the good faith of the debtors. The debtors will be required to pay to unsecured creditors the full amount of equity in the property, up to $56,000, plus interest, but the amount of that equity is uncertain due to the uncertainty of the value of the property. The

---

[1] Counsel's reliance on dicta in <u>Snyder</u>, a case that otherwise entirely supports the trustee's objection, is misplaced, and his argument is wholly unconvincing. Even less persuasive is counsel's preposterous argument that somehow postpetition bad fath is acceptable.

[2] The trustee noted that had he been able to pursue his avoidance action, he would have stepped into the shoes of the second lienholder and the funds would be available for distribution to all creditors; whereas with the estate simply taking the equity from the tenancy by the entireties property created by the deed of trust cancellation, the equity may only be used to satisfy joint debts. This may be so, but the Millers listed all of their debt as joint, and the result in this case will be the same through either method of avoiding the lien. The court also observes that while the debtors represented in court that some of the debt is actually individual debt of Mrs. Miller's, the court must rely on the schedules filed under oath, which list *all* of the debt as joint.

property is worth at least $240,000, and the costs of sale may not be subtracted to reduce that value. If the plan does not provide for the payment of the equity, the case could be converted back to chapter 7. The court will also consider the fact that the trustee has objected to the Millers' discharge when it considers confirmation of the chapter 13 plan. At this time, however, the court cannot say that there is bad faith under Marrama that would preclude the debtors from their right to convert the case to chapter 13 under § 706.[3]

Based on the foregoing, the trustee's objection to exemptions is **ALLOWED** both in chapter 7 and chapter 13. The debtors may not deduct a 6 percent commission from the value of the property to determine the amount that must be paid pursuant to the liquidation test of § 1325(a)(4), and the debtors may not exempt the equity that resulted from the cancellation of Mr. Barnwell's deed of trust. The motion to convert the case to chapter 13 is **ALLOWED**, and the court will consider the question of the Millers' good faith after they have proposed a chapter 13 plan. If the court finds that the plan is not proposed in good faith, it may consider reconverting the case to chapter 7.

**SO ORDERED**.

**END OF DOCUMENT**

---

[3] For a detailed discussion of the applicability and limitations of Marrama, see Hon. Robert Somma & Hon. William Thurman, A Discourse on *Marrama v. Citizens Bank of Massachusetts*, 16 Norton J. Bankr. L. & Prac. 931 (2007).